IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

HAYWOOD HENDERSON,                §
                                  §
              Petitioner,         §
                                  §
v.                                §        No. 4:16-CV-960-Y
                                  §
LORIE DAVIS, Director,            §
Texas Department of Criminal      §
Justice, Correctional             §
Institutions Division,            §
                                  §
              Respondent.         §


## OPINION AND ORDER

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Haywood Henderson, a state prisoner, against Lorie Davis, director of the Texas Department of Criminal Justice, Correctional Institutions Division, Respondent.

After having considered the pleadings and relief sought by Petitioner, the Court has concluded that the petition should be denied.


## I. FACTUAL AND PROCEDURAL HISTORY

In November 2010 Petitioner was indicted in Tarrant County, Texas, Case No. 1210389D, for felony driving while intoxicated (DWI). (Clerk's R. 2-3, doc. 15-11.) The indictment also included a habitual-offender notice alleging prior sequential felony convictions for failure to comply with sex-offender registration and indecency with a child. Following a jury trial, the jury found

Petitioner guilty, Petitioner pleaded true to the habitual-offender allegation, and the court assessed his punishment at thirty years' confinement. (Id. at 83.) Petitioner appealed his conviction, but the Second District Court of Appeals of Texas affirmed the trial court's judgment and the Texas Court of Criminal Appeals refused his petition for discretionary review. (Mem. Op. 18, doc. 15-3; Docket Sheet 1, doc.) Petitioner also filed two state habeas-corpus applications challenging his conviction. The first was dismissed because his direct appeal remained pending. The second was denied without written order by the Texas Court of Criminal Appeals on the findings of the trial court. (WR-79,607-01 & -02, Writs Recv'd & Clerk's Summ. Sheet, docs. 15-20 through 15-22.) This federal habeas petition followed.

The appellate court set out the facts of the case as follows:

One afternoon in August 2010, Fort Worth Police Department (FWPD) Officer Chris Daniels was patrolling the western part of Fort Worth. Officer Daniels saw [Petitioner] driving a car that had an expired registration sticker, so Officer Daniels conducted a traffic stop. [Petitioner] did not drive too fast, weave, brake improperly, or run stop signs in the approximately five to ten seconds that Officer Daniels watched [Petitioner]'s driving.

When Officer Daniels asked to see [Petitioner]'s driver's license, [Petitioner] gave Officer Daniels a credit card. [Petitioner] was coherent, but Officer Daniels noticed a strong smell of an alcoholic beverage coming from [Petitioner]'s car or his breath. Officer Daniels also saw that [Petitioner] had bloodshot and watery eyes and used "slurred, thick, [and] kind of loud speech." Officer Daniels asked [Petitioner] if he had been drinking alcohol, and [Petitioner] responded that he had not had any beers since the previous night.

[Petitioner] conceded, however, that he had beers inside his car. When [Petitioner] got out of the car, Officer Daniels still smelled alcohol on him.

[Petitioner] performed field sobriety tests. According to Officer Daniels, [Petitioner] showed six out of six signs of intoxication on the horizontal-gaze-nystagmus test, four out of eight signs on the walk-and-turn test, and three out of four signs on the one-leg-stand test. Officer Daniels arrested [Petitioner] and placed him in the backseat of the patrol car. When Officer Daniels searched [Petitioner]'s car, he found two twenty-four-ounce beer cans in the car that were mostly empty.

In the patrol car, [Petitioner] was able to take his handcuffs from behind him and bring them underneath his legs to the front of his body, at which time he reached his cell phone and called his wife and his sister. [Petitioner] volunteered to take a breath test, and Officer Daniels took him to the Tarrant County Sheriff's Office, where Officer Daniels gave [Petitioner] a statutory warning about the test. [Petitioner] blew into a breathalyzer machine two times, and the machine registered his alcohol concentration at .245 and .239, each of which is about three times the legal limit.

At trial, Officer Daniels conceded that [Petitioner] was not "falling down drunk" but explained that he had based his arrest of [Petitioner] on his performance of the field sobriety tests; his unsteady balance; his bloodshot, watery, and heavy eyes; his slurred and loud speech; and the "strong odor of an alcoholic beverage coming from his person." Officer Daniels also stated, among other facts, that people may have natural nystagmus without drinking alcohol; that he took seventy-three seconds to complete the horizontal-gaze-nystagmus test, which should normally take less time; that taking too long to conduct that test may induce nystagmus; that [Petitioner] did not have vertical nystagmus (which would have indicated that [Petitioner] was "very intoxicated"); that he was not able to record the statutory breath-test warnings that he gave to [Petitioner]; and that [Petitioner] was coherent and retained his fine motor skills during his detention.

(Mem. Op. 2-4, doc. 15-3; A (footnotes omitted).)

## II. ISSUES

Petitioner claims that he received ineffective assistance of trial counsel in the following respects:

(1) counsel failed to obtain exculpatory evidence in the form of medical records;

(2) counsel failed to independently investigate the charges;

(3) counsel allowed inadmissible and/or questionable evidence to be submitted;

(4) counsel allowed perjured testimony regarding Officer Daniels's credentials without objection; and

(5) counsel failed to object or move to remove a juror who "attempted an improper correspondence with a member of the prosecuting team."

(Pet. 6, doc. 3; Am. Pet. 1-2, doc. 14.)

## III. RULE 5 STATEMENT

Respondent believes that the petition is neither barred by limitations nor subject to the successive-petition bar but that Petitioner's fifth claim is unexhausted and procedurally barred. (Resp't's Answer 5, doc. 16.)

## IV. DISCUSSION

### A. Legal Standard for Granting Habeas-Corpus Relief

A § 2254 habeas petition is governed by the heightened standard of review provided for by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ

of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law, as determined by the United States Supreme Court, or that is based on an unreasonable determination of the facts in light of the record before the state court. *Harrington v. Richter,* 562 U.S. 86, 100-01 (2011); 28 U.S.C. § 2254(d)(1)–(2). This standard is difficult to meet but "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Richter*, 562 U.S. at 102.

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams v. Taylor*, 529 U.S. 362, 399 (2000). Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas-corpus application without written opinion, as in this case, it is an adjudication on the merits, which is entitled to the presumption. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). Under these circumstances, a federal court may assume the state court applied correct standards of federal law

to the facts, unless there is evidence that an incorrect standard was applied. *Townsend v. Sain,* 372 U.S. 293, 314 (1963)[1]; *Catalan v. Cockrell,* 315 F.3d 491, 493 n.3 (5th Cir.2002); *Valdez v. Cockrell,* 274 F.3d 941, 948 n.11 (5th Cir. 2001).

**B. Procedural Default**

As a preliminary matter, Respondent asserts that Petitioner's fifth claim is unexhausted and procedurally barred because it was not raised in the state courts. (Resp't's Answer 10-13, doc. 16.)

State prisoners seeking habeas corpus relief under § 2254 are required to exhaust all claims in state court before requesting federal collateral relief. 28 U.S.C. § 2254(b)(1); *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999). The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest court of the state on direct appeal or in state post-conviction proceedings. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-48 (1999); *Fisher*, 169 F.3d at 302; *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982). The exhaustion requirement is "not satisfied if the petitioner presents new legal theories or factual claims in his federal habeas petition." *Reed v. Stephens,* 739 F.3d 753, 780 (5th Cir. 2014) (quoting *Anderson v. Johnson,* 338 F.3d 382, 386 (5th Cir. 2003)).

In Texas, the highest state court for criminal matters is the

---

[1]The standards of *Townsend v. Sain* have been incorporated into 28 U.S.C. § 2254(d). *Harris v. Oliver*, 645 F.2d 327, 330 n.2 (5th Cir. 1981).

Texas Court of Criminal Appeals. *Richardson v. Procunier*, 762 F.2d 429, 431-32 (5th Cir. 1985). Therefore, a Texas prisoner may typically satisfy the exhaustion requirement by presenting both the factual and legal substance of a claim to the Texas Court of Criminal Appeals in either a petition for discretionary review or a state post-conviction habeas-corpus application. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07 (West 2015); *Depuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988).

Petitioner raised ineffective-assistance-of-counsel claims in his state habeas application that sufficiently correspond with his first four claims raised in this petition, however none of claims raised in the state application correspond to his fifth claim. Thus, that claim, raised for the first time in this federal petition, is unexhausted for purposes of § 2254(b)(1)(A). Under the Texas abuse-of-the-writ doctrine, however, Petitioner cannot now return to state court for purposes of exhausting the claim. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4(a)-(c). The abuse-of-the-writ doctrine represents an adequate state procedural bar to federal habeas review. *Nobles v. Johnson,* 127 F.3d 409, 423 (5th Cir. 1997). Therefore, absent a showing of cause and prejudice or a miscarriage of justice, the claim is unexhausted but procedurally barred from this Court's review. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Coleman v. Thompson,* 501 U.S. 722, 750 (2000). As such, the following discussion address only Petitioner's first four

claims.

## C. Ineffective Assistance of Counsel

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. Const. amend. VI, XIV; *Evitts v. Lucey,* 469 U.S. 387, 396 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697.

In applying this test, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id.* at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where a petitioner's ineffective-assistance claims have been reviewed on their merits and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of the *Strickland* standard in light of the state-court record. *Richter,* 562 U.S. at 100-01 (quoting *Williams v. Taylor,* 529 U.S. 362, 410 (2000)); *Bell v.*

*Cone*, 535 U.S. 685, 698-99 (2002). Thus, a federal court's review of state-court decisions regarding ineffective assistance of counsel must be "doubly deferential" so as to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow,* --- U.S. ---, 134 S. Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster,* 563 U.S. 170, 190 (2011)).

Petitioner was represented by Natherral Washington at trial. Counsel responded to Petitioner's claims in an affidavit filed in the state habeas proceeding as follows (any omissions or errors in spelling, grammar, and/or punctuation are in the original):

> I was appointed by the trial court to represent [Petitioner] in the above-referenced matter in 2010. Upon getting notice of the appointment, I immediately contacted [Petitioner] via letter. I also filed a number of pretrial motions on his behalf. Specifically, a 404(b) Motion, Motion for Discovery of Exculpatory Evidence, Motion for Discovery of Punishment Evidence, Motion for Discovery of the State's Witness List, and a Motion for Discovery of the Criminal History of the State's Witnesses. Those motions a part of trial court's file and thus not included as exhibits with this affidavit. I filed requests for and received the Texas Commission on Law Enforcement Officer Standards and Education training history of the officer's involved in [Petitioner]'s arrest. I also filed an open records request for the maintenance and repair records for the Intoxilyzer 5000 used to test [Petitioner]. The state ultimately produced all of the records requested. I used the records and information provided to me to cross-examine the witnesses called by the state. However, as evidenced by the Trial Court record, [Petitioner], a habitual offender with multiple Driving While Intoxicated convictions, recorded a .245 and a .239 on the Intoxilyzer test.
>
> I had more than a dozen meetings with [Petitioner] to discuss his case. [Petitioner] promised on a number of occasions to arrange meetings so that I could speak to witnesses that he believed could help his case. One of

those witnesses was allegedly a man that he was with shortly before his arrest. [Petitioner] never provided a name, phone number or address for the man. The other witnesses were [Petitioner]'s sister and a woman he referred to as his wife. The woman that [Petitioner] referred to as his wife attended court with him on multiple occasions but had no independent knowledge of the facts surrounding [Petitioner]'s arrest. [Petitioner] promised to make the woman he called his wife and his sister available to testify at his trial. I called numbers provided to me by [Petitioner] on a number of occasions attempting to arrange meeting to discuss the testimony his sister would offer. The woman that was identified as his sister told me that she had nothing to add and would not testify for [Petitioner] at his trial.

During the course of one of my meetings with [Petitioner] he indicated that he had damaged his knee several years earlier. However, [Petitioner] was unable to provide any specific detail about the injury or even the names of the doctors that treated him. (He only knew that he was treated at John Peter Smith hospital.) Further still, upon reviewing the video of [Petitioner]'s arrest it was obvious that whatever injury he claimed to have did not impact his ability to perform the standardized field sobriety evaluations. [Petitioner] performed very well on the physical evaluations despite his claim to have an injured knee. Based upon my training and experience and having tried dozens Driving While Intoxicated cases prior to [Petitioner]'s case, I believed that the video of [Petitioner] performing the test as well as he did spoke for itself and was [Petitioner]'s strongest evidence. Indeed, the Assistant District Attorney and officers acknowledged that [Petitioner] performed relatively well on the evaluations. As a result, I did not believe old medical records that [Petitioner] did not give me reason to believe were relevant benefited [Petitioner]'s defense as video evidence indicated that he was able to perform the physical portion of the standardized field sobriety evaluations with relative ease. Unfortunately, the same could not be said for [Petitioner] when it came to mental portion of the evaluations.

As evidenced by the video, when the officer asked [Petitioner] for a driver's license, [Petitioner] produced a credit card, fumbled through his wallet and eventually admitted that he did not have a license.

[Petitioner]'s truck was also full of beer cans at the time of his arrest. Having had multiple conversations with [Petitioner] when he was not intoxicated as well as when he was intoxicated I knew [Petitioner] to be a very intelligent and articulate man with the ability to understand simple instructions when sober. As [Petitioner] came to court and to my office in an intoxicated state more than once (his bond was held insufficient for appearing in court intoxicated), I had the ability to gage his normal mental and physical capacity and his intoxicated mental and physical capacity a number of times. As a result, based upon my training and experience, I believed that [Petitioner] was best served by focusing on the stark difference between his performance on the standardized field sobriety evaluations and what would be expected of a man that had a blood alcohol concentration that was three times greater than the legal limit. I believed this course of action also made sense as the Intoxilyzer 5000 used to test [Petitioner] had been removed from service just 10 days after [Petitioner]'s arrest. My goal was to establish that since [Petitioner] performed so well on the physical tests and the machine had been removed less than two weeks after his test for a malfunction that reasonable doubt existed as to whether [Petitioner] was intoxicated at the time of his arrest.

Despite [Petitioner]'s claim that I failed to conduct an independent investigation, I went to the area of his arrest two times prior to his trial. I took a number of photographs and used a measuring wheel to dispute the claims of the arresting officer. As reflected in the trial record, I was able to cross-examine the officer about a mistake in the police report regarding the streets and distances. I also filed open records requests to get information about the officers and Intoxilyzer 5000 used to test [Petitioner]. I used this information to cross-examine the state's witnesses. In addition to all of these things I had several conversations with [Petitioner] about his alcohol consumption. [Petitioner], who had two prior convictions for Driving While Intoxicated, admitted to drinking several beers, but insisted that the punishment range for a habitual offender was too high for a Driving While Intoxicated offense. [Petitioner] told me more than once he would plead guilty if the state would agree to give him a short prison sentence. At [Petitioner]'s request, I communicated a number of plea bargain offers which

involved prison time for [Petitioner] to the state. The
state rejected [Petitioner]'s offers and he rejected the
state's offers.

Having tried more than 50 cases at the time of
[Petitioner]'s trial, I made what I believed to be timely
and proper objections. While [Petitioner] and I certainly
would have liked for the state's witnesses to have given
more favorable testimony, I was unaware that any witness
called by the state committed perjury while on the
witness stand.

(WR-79,607-02, Clerk's Summ. Sheet, 87-89, doc. 15-22 (citations to

exs. omitted).)

The Texas Court of Criminal Appeals considered and rejected

Petitioner's claims. In so doing, the court relied on the following

findings of fact and conclusions of law, based upon *Strickland* and

other relevant United States Supreme Court and state cases, adopted

by the state habeas court:

<u>FINDINGS OF FACT</u>

. . .

2.  Mr. Washington has been licensed as an attorney in
    the State of Texas since November 2003.

3.  Mr. Washington tried more than fifty cases,
    including numerous driving while intoxicated cases,
    before representing [Petitioner].

4.  Mr. Washington had received training regarding
    driving while intoxicated cases before representing
    [Petitioner].

5.  Mr. Washington was well-qualified to represent
    [Petitioner] in this trial.

6.  The Tarrant County Criminal District Attorney's
    Office maintains an open file policy through the
    Tarrant County Electronic Case Filing System
    (ECFS).

7.  Mr. Washington had access to the State's files through the Tarrant County ECFS.

8.  Mr. Washington received information that [Petitioner] had recorded a blood-alcohol concentration level of .245 and .239 on his intoxilyzer tests.

9.  Mr. Washington requested and received the Texas Commission on Law Enforcement Standards and Education (TCLEOSE) training history of the officers involved in [Petitioner]'s arrest.

10.  Mr. Washington requested and received the maintenance and repair records for the Intoxilyzer 5000 used to test [Petitioner].

11.  Mr. Washington visited the arrest scene on two occasions where he took photographs and used a measuring wheel to prepare for disputing the arresting officers.

12  Mr. Washington reviewed the videotape from [Petitioner]'s arrest to prepare for disputing the State's case at trial.

13.  Mr. Washington filed numerous pre-trial motions on [Petitioner]'s behalf including multiple discovery motions seeking exculpatory evidence, punishment evidence and witness criminal history information.

14.  Mr. Washington met with [Petitioner] on numerous occasions to discuss the defense investigation and prepare their trial defense.

15.  [Petitioner] promised Mr. Washington multiple times that he could arrange meetings with potentially helpful witnesses, but never provided this information.

16.  [Petitioner] provided Mr. Washington with the names of his wife and sister as potential witnesses; however, neither woman had independent factual knowledge regarding [Petitioner]'s arrest.

17.  [Petitioner] informed Mr. Washington that he had damaged his knee several years before his arrest; however, he was unable to provide any specific

details or the names of any treating physicians.

18. Mr. Washington obtained all available medical records.

19. Mr. Washington fully and adequately investigated [Petitioner]'s case.

20. Mr. Washington explained to [Petitioner] the effect that his multiple prior driving while intoxicated convictions would have on his potential punishment range.

21. Mr. Washington fully and adequately communicated with [Petitioner] regarding the State's case against him.

22. Mr. Washington developed a defense theory that [Petitioner]'s good physical performance on the field sobriety evaluations was starkly different than the performance expected by a person with a blood-alcohol concentration three times higher than the legal limit.

23. Mr. Washington sought to raise questions about the validity of the intoxilyzer tests since the Intoxilyzer 5000 used to test [Petitioner] was removed from service ten days after his arrest.

24. Mr. Washington's defense was hampered by [Petitioner]'s mental performance on the videotape as well as the fact that his truck was full of beer cans when he was arrested.

25. The defense theory developed by Mr. Washington was a matter of reasonable professional judgment

26. Mr. Washington thoroughly prepared [Petitioner]'s trial defense.

. . .

29. Mr. Washington engaged in plea negotiations on [Petitioner]'s behalf, but was unable to secure a mutually acceptable plea bargain agreement.

30. Mr. Washington thoroughly cross-examined the State's witnesses, and attempted to impeach their

testimony.

31. Mr. Washington is unaware of any perjured testimony by a State's witness.

32. Mr. Washington's decision not to object to any witness testimony based on perjury was a matter of reasonable professional judgment.

33. Mr. Washington fully and adequately litigated [Petitioner]'s trial defense.

34. Mr. Washington provided [Petitioner] with adequate representation guaranteed by the Sixth Amendment.

35. The following evidence undercuts any likelihood that the outcome of this case would have been different with another counsel or if Mr. Washington had represented [Petitioner] in another manner:

    a. On August 16, 2010, Fort Worth Police Officers Chris Daniels and Jennifer Thew observed [Petitioner] driving a pickup truck with an expired registration sticker.

    b. Officer Daniels initiated a traffic stop and requested that [Petitioner] provide his license and insurance, to which [Petitioner] responded by handing the officer a credit card.

    c. [Petitioner]'s eyes were watery and blood-shot; his speech was thick, slurred and loud; and he smelled strongly of alcohol.

    d. [Petitioner] failed all three field sobriety tests.

    e. Officer Daniels transported [Petitioner] to the Tarrant County Jail where a breathalyzer test was administered.

    f. Mark Fondren, the forensic chemist, determined that [Petitioner] has a blood-alcohol concentration level of .245 and .239 - both results approximately

three times the legal limit.

    g.   Mr. Fondren opined that [Petitioner]'s blood-alcohol concentration level was sufficient to deprive him of the normal use of his mental and physical faculties with regard to operating a motor vehicle.

36.   Given this evidence, there is no reasonable probability that the jury would have reached a different result or verdict with counsel other than Mr. Washington.

37.   [Petitioner] was not denied effective assistance of trial counsel.

CONCLUSIONS OF LAW

1.   An applicant challenging the effectiveness of his trial counsel must establish that his counsel committed errors so serious that he was not functioning as counsel guaranteed by the Sixth Amendment, and that but for their alleged errors, the outcome of the proceedings would have been different.

2.   The reviewing court should examine the totality of counsel's representation and indulge a strong presumption that his performance falls within the wide range of reasonable professional assistance.

3.   Trial counsel's representation should not be evaluated through 20/20 hindsight, but judged in light of the professional norms prevailing when the representation occurred.

4.   An applicant must prove ineffective assistance of counsel by a preponderance of the evidence.

5.   Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes a particular investigation unnecessary.

6.   Counsel is not required to investigate every conceivable line of evidence no matter how unlikely the effort would be to assist their client.

7.   Strategic choices made after thorough investigation

of the relevant law and facts are virtually unchallengeable; strategic choices made after a less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the investigation's limitations.

8.  Mr. Washington adequately and independently investigated [Petitioner]'s case.

10. Mr. Washington made reasonable efforts to gather all potential defense evidence.

11. Mr. Washington fully and adequately communicated with [Petitioner] regarding the State's case against him.

12. Mr. Washington developed a reasonable defense strategy.

13. Mr. Washington fully and adequately prepared for [Petitioner']s trial.

14. Mr. Washington exercised reasonable professional judgment in deciding which witnesses to present and what evidence to contest.

    . . .

16. Mr. Washington functioned as counsel guaranteed by the Sixth Amendment.

17. [Petitioner] has failed to show that there is a reasonable probability that, but for the alleged acts of misconduct, the result of his trial would have been different.

18. A party fails to carry his burden to prove ineffective assistance of counsel where the probability of a different result absent the alleged deficient conduct sufficient to undermine confidence in the outcome is not established.

19. [Petitioner] received effective assistance of trial counsel.

(WR-79,607-02, Clerk's Summ. Sheet, 132-40, doc. 15-22 (citations

omitted).)

Petitioner fails to rebut the state courts' findings of fact by clear-and-convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Thus, the findings, including the court's credibility findings, are entitled to a presumption of correctness. *Galvan v. Cockrell,* 293 F.3d 760, 764 (5th Cir. 2002). Applying the appropriate deference and having independently reviewed Petitioner's claims in conjunction with the state-court records, it does not appear that the state courts' application of *Strickland* was objectively unreasonable. Petitioner's claims are largely conclusory, refuted by the record, or involve strategic and tactical decisions made by counsel, all of which generally do not entitle a state petitioner to federal habeas relief. *See Strickland,* 460 U.S. at 689 (providing strategic decisions by counsel are "virtually unchallengeable" and generally do not provide a basis for post-conviction relief on the grounds of ineffective assistance of counsel); *Evans v. Cockrell,* 285 F.3d 370, 377 (5th Cir. 2002) (providing petitioner must "bring forth" evidence, such as affidavits, from uncalled witnesses in support of an ineffective-assistance claim); *Green v. Johnson,* 160 F.3d 1029, 1042 (5th Cir. 1998) (providing "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue"); *United States v. Green,* 882 F.2d 999, 1003 (5th Cir. 1989) (providing "[a] defendant who alleges a

failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial"); *Alexander v. McCotter,* 775 F.2d 595, 602 (5th Cir. 1985) (providing ineffective assistance claims "based upon uncalled witnesses [are] not favored because the presentation of witness testimony is essentially strategy and thus within the trial counsel's domain, and . . . speculations as to what these witnesses would have testified [to] is too uncertain").

Petitioner has not demonstrated deficient performance or shown any reasonable probability that the outcome of his trial would have been different but for counsel's representation, in light of the overwhelming evidence of his guilt. A petitioner shoulders a heavy burden to overcome a presumption that his counsel's conduct is strategically motivated, and to refute the premise that "an attorney's actions are strongly presumed to have fallen within the wide range of reasonable professional assistance." *Messer v. Kemp,* 760 F.2d 1080, 1090 (11th Cir. 1985). Petitioner fails to meet that burden. He presents no evidentiary, factual, or legal basis in this federal habeas action that could lead the Court to conclude that the state courts unreasonably applied the standards set forth in *Strickland* based on the evidence presented in state court. 28 U.S.C. § 2254(d).

## V. CONCLUSION

For the reasons discussed, the Court DENIES Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Further, Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253. A certificate of appealability may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003). "Under this standard, when a district court denies habeas relief by rejecting constitutional claims on their merits, 'the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *McGowen v. Thaler,* 675 F.3d 482, 498 (5th Cir. 2012) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)). When a district court denies habeas relief by rejecting constitutional claims on procedural grounds without reaching the merits, the petitioner must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* (quoting *Slack,* 529 U.S. at 484). Petitioner has not made a showing that reasonable jurists would question this Court's resolution of his first four claims or its

procedural ruling as to his fifth claim. Therefore, a certificate
of appealability should not issue.

SIGNED February 28, 2018.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE